IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02885-DDD-NRN

PRINCE ATO NUNOO,

     Plaintiff,

v.

TARGET CORPORATION,

     Defendant.

---

**REPORT AND RECOMMENDATION ON DEFENDANT'S PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (ECF No. 26)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court on Defendant Target Corporation's ("Target" or "Defendant") Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss"), ECF No. 26,[1] which was referred to the undersigned by Chief Judge Daniel D. Domenico, ECF No. 38. Plaintiff Prince Ato Nunoo ("Plaintiff"), proceeding pro se, filed a response, ECF No. 28, and Target filed a reply, ECF No. 32. The Court gave Plaintiff leave to file a sur-reply, ECF No. 33-1, and heard oral argument on January 14, 2026, ECF No. 44. The Court, having taken judicial notice of the case file and considering the applicable federal and state statutes and case law, **RECOMMENDS** that the subject Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Target's brief in support of the Motion to Dismiss was filed separately at ECF No. 25.

I.    **FACTUAL BACKGROUND**[2]

This is an employment discrimination case. Plaintiff, a Black man of Ghanaian national origin, alleges that Target is liable for multiple violations of federal and state employment laws. The crux of the lawsuit centers on claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and the Colorado Anti-Discrimination Act ("CADA"). ECF No. 24 at 1. He also asserts claims under Colorado common law for intentional/negligent infliction of emotional distress, breach of implied contract, and promissory estoppel. *Id.* at 2. Plaintiff alleges that Target discriminated against him based on his disability (severe anxiety and depression), race, and national origin, and retaliated against him for opposing discriminatory practices.

The SAC details a series of adverse actions, including the denial of medical leave, disparate treatment in scheduling and job duties, and systematic rehire denials, which Plaintiff alleges were motivated by discriminatory and retaliatory animus. The SAC also highlights a previous Equal Employment Opportunity Commission ("EEOC") settlement involving Target, suggesting the company was aware of its legal obligations, which Plaintiff includes to bolster his claims of malice or reckless indifference. *Id.* at 3.

The key factual allegations are as follows. Plaintiff was hired by Target in November 2022 as a seasonal General Merchandise Expert at Target's Fort Lauderdale, Florida location. *Id.* ¶ 5. In early 2023, Plaintiff claims he enrolled in

---

[2] Unless otherwise noted, all factual allegations are taken from Plaintiff's Second Amended Complaint and Demand for Jury Trial ("SAC"), ECF No. 24, and are presumed to be true for the purposes of the Motion to Dismiss. Any citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Target's "Dream to Be" program but was denied mentorship and advancement opportunities that were offered to similarly-situated non-Ghanian employees. *Id.* In September 2023, he was rejected without explanation for a position that he was recruited to apply for when his supervisors "withheld the routine endorsement necessary for advancement, despite comparable support provided to non-Ghanaian employees." *Id.* at 6. In May 2024, Plaintiff requested leave to transfer to the Denver area, but the transfer was unreasonably delayed, and on June 26, 2024, Plaintiff requested accommodations related to his disability. *Id.* at 6–7.

On June 29, 2024, Plaintiff filed an internal ethics complaint alleging disparate treatment based on his Ghanaian national origin. *Id.* Soon after, Target promoted the Human Resources ("HR") Executive Team Leader who was the subject of Plaintiff's complaint to a higher HR position, and Plaintiff received additional write-ups and a reduction in hours. *Id.*

On August 28, 2024, Target denied Plaintiff's medical leave request, stating "Certification Not Returned" as the reason, even though Plaintiff submitted medical documentation. *Id.* As a result of the leave denial on August 28, 2024, Plaintiff's FMLA-protected leave was revoked, leaving him without the ability to resume work. *Id.* During this gap, his Employment Authorization Document ("EAD") expired. Thus, Plaintiff maintains that Target used the EAD expiration to terminate Plaintiff's employment, which he says was pretextual because the expiration would not have occurred if FMLA protection had remained. *Id.*

Plaintiff further alleges a pattern of retaliation and discrimination that continued following his separation. Specifically, he claims that Target's investigator assured him of

3

rehire eligibility, yet after relocating to Colorado, Plaintiff's applications were systematically rejected. *Id.* at 8. Plaintiff insists that these actions—leave denial, engineered separation, and refusal to rehire—were causally linked to his protected activities of seeking disability accommodation (June 26) and opposing discrimination (June 29), and constituted retaliation and discrimination on the bases of disability and race/national origin under Title VII, ADA, FMLA, and CADA.

As relief, Plaintiff seeks declaratory and injunctive relief (including instatement to a suitable position, expungement of negative records, and court-monitored training), compensatory, punitive, and liquidated damages for economic and non-economic losses, restoration of benefits, fees, interest, and such other relief as the court deems just and proper. *Id.* at 14–17.

## II.    LEGAL STANDARDS

### a.  Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

### b.  Pro Se Plaintiff

The Court must construe the SAC and other papers filed by Plaintiff liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall*, 935 F.2d at 1110. However, the Court should not be an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110; *see also Craig v. McCollum*, 590 F. App'x 723, 726 (10th Cir. 2014) ("Our liberal construction of pro se petitions does not exempt them from the rules of procedure binding the petitions of other litigants.") (citation omitted).

### III.    ANALYSIS

Target moves for partial dismissal of the SAC. Target first argues that Plaintiff's discrimination, retaliation, harassment, and ADA claims that allegedly occurred *during* his term of employment with the company are time-barred. Target also contends that Plaintiff's intentional/negligent infliction of emotional distress claim fails as a matter of

law. Finally, Target argues that Plaintiff cannot state a breach of contract claim.

Accordingly, Target seeks to dismiss Counts 1, 3, 4, 5, 9, 11, and 12 of the SAC.

### a. Timeliness of the Title VII, ADA, and CADA Claims (Counts 1, 3–5, & 9)

Target argues that any allegations regarding events that occurred during

Plaintiff's period of employment are time-barred and cannot support Plaintiff's Title VII,

ADA, and CADA claims because they happened more than 300 days before Plaintiff

filed his EEOC charge on August 28, 2025.

"An employee wishing to challenge an employment practice under Title VII must

first 'file' a 'charge' of discrimination with the EEOC." *Montes v. Vail Clinic, Inc.*, 497

F.3d 1160, 1163 (10th Cir. 2007) (citing 42 U.S.C. § 2000e–5(e)(1)). Such a charge

must be filed within "three hundred days after the alleged unlawful employment practice

occurred." 42 U.S.C. § 2000e–5(e)(1). If the alleged unlawful incident occurs outside the

300-day window, a plaintiff will "lose the ability to recover for it." *Nat'l R.R. Passenger*

*Corp. v. Morgan*, 536 U.S. 101, 110 (2002); se*e also Robinson v. Bd. of Regents of*

*Univ. of Colo.*, 390 F. Supp. 2d 1011, 1020 (D. Colo. 2005) ("It is well-settled that a

claim under Title VII cannot be brought with respect to discrete acts of discrimination

that occur more than 300 days prior to the filing of the charge.") (citing *Morgan*, 536

U.S. at 114). "Each discrete incident of discriminatory or retaliatory treatment constitutes

its own 'unlawful employment practice' for which administrative remedies must be

exhausted." *Salemi v. Colo. Pub. Emp. Ret. Ass'n*, 747 F. App'x 675, 688 (10th Cir.

2018) (unpublished) (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)

(alterations omitted)). The 300-day limitation period begins on "the date the employee is

notified of an adverse employment decision by the employer." *Daniels v. United Parcel*

*Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012) (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003)). "When a complaint alleges multiple discrete acts, the limitations period runs separately for each act." *Id.* (citing *Davidson*, 337 F.3d at 1185). Therefore, with respect to claims based on discrete acts of discrimination or retaliation, the Court may not consider incidents occurring more than 300 days prior to a plaintiff's EEOC charge. *Salemi*, 747 F. App'x at 688; *Morgan*, 536 U.S. at 114.

Exhaustion of administrative remedies is also required under the ADA. *See Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 n.7 (10th Cir. 2018). CADA likewise requires a charge be filed "within three hundred days after the alleged discriminatory or unfair employment practice occurred, and if a charge is not timely filed, it is barred." Colo. Rev. Stat. § 24-34-403.

While failure to exhaust under Title VII or and the ADA is an affirmative defense and does not bar a federal court from assuming jurisdiction over a claim, *see Lincoln*, 900 F.3d at 1185, "[c]ourts in this district have recognized that exhaustion is a prerequisite to exerting subject matter jurisdiction over CADA claims." *Ybarra v. Bd. of Cnty. Comm'rs*, No. 25-cv-00490-MDB, 2026 WL 884903, at *4 (D. Colo. Mar. 31, 2026). Although Target brings its motion under Rule 12(b)(6), given the jurisdictional implications of failure to exhaust administrative remedies under CADA, it must also be construed as factual attack on the Court's subject matter jurisdiction. When a party's motion challenges the facts upon which subject matter jurisdiction depends, "a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary

hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted). Relying on evidence outside the pleadings in addressing such a motion does not, as a general rule, convert the motion to one for summary judgment under Rule 56. *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002).

Plaintiff filed his charge with the EEOC and the Colorado Civil Rights Division on August 28, 2025. ECF No. 24 at 3.[3] Plaintiff was employed by Target from November 2022 until his "constructive discharge" on September 6, 2024. ECF No. 24 at 5–7. Accordingly, it would appear that any claims arising during his employment period are time-barred.

However, Plaintiff responds that his employment-related claims are timely because he alleges in the SAC that he submitted an EEOC intake questionnaire on February 9, 2025, and, under *Federal Express Corp. v. Holowecki,* 552 U.S. 389 (2008), this can be considered the functional equivalent to a charge. Plaintiff pled as much in his SAC. *See* ECF No. 24 at 3 ("Plaintiff exhausted administrative remedies under liberal construction for pro se filings by submitting an EEOC intake questionnaire on February 9, 2025 (Charge No. 541-2025-01816). After 201 days of administrative delay, the charge was verified on August 28, 2025 via a detailed submission process.").

In *Holowecki,* the Supreme Court held that a filing other than a formal charge— such as an EEOC intake questionnaire—can, under certain circumstances, constitute a charge of discrimination. 552 U.S. at 402*; Semsroth v. City of Wichita*, 304 F. App'x

---

[3] The Charge of Discrimination that Plaintiff filed with the EEOC was attached as an exhibit to Plaintiff's initial pleading. *See* ECF No. 1-2 at 7–9.

707, 712 (10th Cir. 2008) (adopting *Holowecki*'s ADEA analysis in Title VII context). A document filed with the EEOC constitutes a charge if it: (1) contains a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of; and (2) can be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee. *Semsroth*, 304 F. App'x at 712–13.

In this case, Plaintiff properly pled exhaustion in the SAC. Therefore, Target bears the burden at the motion to dismiss stage that the intake questionnaire does not constitute a charge. But the February 9, 2025 intake questionnaire has not been filed anywhere for the Court to review. The issue of whether a document can be construed as a request to take remedial action turns on an objective standard and not the subjective intent of the claimant. *See Semsroth*, 304 F. App'x at 713. The Court cannot determine if Plaintiff's intake questionnaire meets this standard if it does not have access to the document.

Target notes that the EEOC, in response to the intake questionnaire, warned Plaintiff that the inquiry "is not the same as filing a charge of discrimination." *See* ECF No. 13-3. According to Target, this shows that Plaintiff had not yet filed his charge. However, although the EEOC's conduct following the filing of the document informs the issue, a plaintiff need not present evidence that the EEOC actually treated a document as a charge. *Semsroth*, 304 F. App'x at 713. Again, the standard is an objective one. Moreover, if an intake questionnaire is deemed a charge, the subsequent filing of a formal charge "does not nullify [the] earlier, proper charge." *Holowecki*, 552 U.S. at 406

(rejecting argument that subsequent filing of a formal charge demonstrates that a complainant did not intend to an earlier document to constitute a charge).

In short, without reviewing the February 9, 2025 intake questionnaire, the Court cannot say whether it constitutes a charge for exhaustion purposes. Plaintiff has alleged that it does. That is enough, for now. Target may raise this issue on summary judgment, but it cannot be the basis for dismissal under Rule 12.

### b. Intentional and Negligent Infliction of Emotional Distress Claim (Count 11)

Next, Target argues that Plaintiff's Count 11 for Intentional Infliction of Emotional Distress ("IIED") and Negligent Infliction of Emotional Distress ("NIED") fails to state a claim. The Court agrees.

Under Colorado law, IIED claims have three required elements: "1. the defendant engaged in extreme and outrageous conduct; 2. the defendant engaged in the conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and 3. the plaintiff incurred severe emotional distress which was caused by the defendant's conduct." *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994) (internal punctuation omitted). Extreme and outrageous conduct is that which, taking into account the totality of the circumstances, "goes 'beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" *Riske v. King Soopers*, 366 F.3d 1085, 1089 (10th Cir. 2004) (quoting *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 756 (1970)). Whether conduct is extreme and outrageous is normally a question of fact for a jury to determine, but the Court should determine in the first instance "whether reasonable [people] could differ on the outrageousness issue." *Id.* (quoting *Meiter v. Cavanaugh*, 580 P.2d 399, 401 (Colo. App. 1978)).

10

Here, Plaintiff claims that "Target engaged in outrageous or reckless conduct, including sham investigations, pretextual discipline, and blacklisting, resulting in severe emotional distress to Plaintiff." ECF No. 24 at 13. The Court finds that, as a matter of law, these threadbare allegations do not rise to the "extremely high" level of outrageousness required to create liability for IIED. *See McCarty v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126–27 (Colo. App. 2000) (allegations that the defendants engaged in a pattern of physical and psychological intimidation against the plaintiff, including attempted vehicular assault, were insufficient to maintain IIED claim).

To make out a negligent infliction of emotional distress claim, "a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought." *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496–97 (Colo. App. 2011). The plaintiff must show that any physical injury or long-continued emotional disturbance "was caused by her fear for her own safety." *Scharrel v. Wal–Mart Stores, Inc.*, 949 P.2d 89, 93 (Colo. App. 1997). The Court agrees with Target that Plaintiff provides no factual allegations in the SAC that he ever experienced an unreasonable risk of physical harm or feared for his own safety. This claim should therefore be dismissed.

### c. Implied Breach of Contract Claim (Claim 12)

Finally, Target seeks dismissal of Plaintiff's claim that "Target breached implied promises under its Code of Ethics and other employment policies, including commitments to non-retaliation, employee development, and fair treatment." ECF No.

11

24 at 14. "An employee handbook cannot serve as the basis for a breach of implied contract or promissory estoppel claim if it clearly and conspicuously disclaims an intent to be bound by its terms." *Winkler v. Bowlmor AMF*, 207 F. Supp. 3d 1185, 1191 (D. Colo. 2016). The Team Member Handout that Plaintiff refers to in the SAC provides that, "except for the policy of at-will employment, Target's policies, practices or procedures, including this handbook, do not constitute a contract, expressed or implied." ECF No. 25-1 at 2.[4] The Court finds this to be a clear and conspicuous disclaimer of an intent to be bound by the Team Member Handbook's procedures.

In his response, Plaintiff argues that Target can still be liable for violating federal immigration law. The merits and relevance of these allegations are questionable, but, given that they are not contained anywhere in the SAC, the Court must, in any event, disregard them.

## IV.    CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that Defendant Target Corporation's Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 26, be **GRANTED IN PART** and **DENIED IN PART** and that Counts 11 and 12 of Plaintiff's Second Amended Complaint be dismissed.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District**

---

[4] The Court can consider this document under Rule 12(b)(6) because it is referenced in the SAC, central to Plaintiff's implied breach of contract claim, and Plaintiff does not dispute its authenticity. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

**Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated at Denver, Colorado this 26th day of June, 2026.

N. Reid Neureiter
United States Magistrate Judge